# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 11-CV-3631 (JFB) (AKT)

ROBERT OSUNA,

Plaintiff,

VERSUS

GOVERNMENT EMPLOYEES INSURANCE COMPANY,

Defendant.

**MEMORANDUM AND ORDER**
April 17, 2014

JOSEPH F. BIANCO, District Judge:

Plaintiff Robert Osuna ("plaintiff" or "Osuna") commenced this action against the Government Employees Insurance Company ("defendant" or "GEICO"), alleging that defendant owes a duty to defend and indemnify him in relation to a car accident that occurred while he was driving. Specifically, plaintiff's wife, Banu Osuna, was injured in the accident and has sued plaintiff in an effort to recover damages for her injuries. Plaintiff sought insurance coverage from defendant, but defendant disclaimed coverage because plaintiff's automobile insurance policy does not include spousal liability insurance. This lawsuit followed, in which plaintiff asserts the following claims: (1) defendant violated Section 3420 of the New York State Insurance Law ("Section 3420") by failing to make Supplemental Spousal Liability Insurance available to him, and by failing to notify him properly about the availability and cost of such insurance (first through fourth causes of action); (2) Banu Osuna was not plaintiff's spouse at the time of the accident (fifth and sixth causes of action); and (3) defendant is estopped from denying coverage (seventh cause of action).

Before the Court are cross-motions for summary judgment made pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the Court denies plaintiff's motion in its entirety, and grants defendant's motion with respect to every claim except plaintiff's fourth cause of action. In particular, although it is uncontroverted that the 2009 policy at the core of this case was a renewal policy, Osuna argues that Section 3420(g)(2) requires the notification of the availability of supplemental spousal liability insurance to be contained on the front of the premium in boldface type. The Court disagrees and concludes that such an interpretation of the statutory provision is fundamentally

1

inconsistent with the plain language of this statutory provision. More specifically, the statute makes clear that the boldface type requirement applies only to policies that became effective on or after January 1, 2003, and not to renewals of policies originally issued prior to that date. Instead, the second sentence of that law addresses the situation present here—namely, when the policy was originally issued and became effective prior to the January 1, 2003 date but then was renewed after that date. In those situations, even though the boldface print is not required, a notice of the availability of supplementary spousal liability insurance (with an explanation of such coverage and the insurer's premium for such coverage) is still required at least once per year. Plaintiff contends that a renewal of a policy that was originally issued prior to January 1, 2003 is not subject to the less onerous, non-bold print notification requirement contained within the statute. However, the statute explicitly states in the second sentence, with respect to the less onerous requirement, that it applies to "motor vehicle liability policies issued pursuant to article six of the vehicle and traffic law, *including those originally issued prior to January first, two thousand three.*" N.Y. Ins. Law § 3420(g)(2) (emphasis added). In other words, it is abundantly clear from the plain language of the statute that the policy here—which plaintiff does not dispute was originally issued in 2003 and renewed thereafter into 2009—does not fall within the policies requiring the boldface print, but rather falls within the policies that simply require the concise notification at least once per year in accordance with the second sentence of the statute. Thus, plaintiff's second cause of action and third cause of action, which claim that plaintiff did not receive boldface notification, cannot survive summary judgment. However, his fourth cause of action, which asserts that he did not receive any notification of the availability of the insurance, does survive summary judgment because (1) as a renewal policy, he was entitled to the notification set forth in the second sentence of Section 3420(g)(2), and (2) there is a clear factual dispute regarding whether he received such notification—defendant has submitted declarations and policy documents indicating that he received such notification, while plaintiff has submitted a sworn statement that he did not receive any notification of the availability of the supplementary spousal liability insurance in connection with his renewal policy. Therefore, a trial is necessary with respect to that factual dispute on the fourth cause of action.[1]

The Court granted defendant's motion for summary judgment with respect to every claim except plaintiff's fourth cause of action in an oral ruling on September 20, 2013. Following the Court's oral ruling, plaintiff's counsel indicated that he believed the Court's ruling regarding the policy precluded plaintiff from proceeding on the fourth cause of action. The Court explained to plaintiff's counsel that his understanding

---

[1] As set forth *infra*, the other causes of action have no merit and cannot survive summary judgment. The first cause of action, claiming that the supplemental spousal liability insurance was unavailable, is without merit because the uncontroverted evidence is that it was available; the only question here is whether plaintiff received proper notice regarding the availability. The fifth and six causes of action, claiming that Banu Osuna was not his spouse at the time of the accident, also cannot survive because it is uncontroverted that no final divorce decree was issued prior to the accident, and the policy definition of "spouse" for the purpose of receiving benefits (which refers to a spouse being a resident in the same household) does not apply to the spousal liability exclusion. Finally, there is no estoppel claim based upon the July 22, 2010 letter because the defendant had already explicitly disclaimed coverage.

2

was incorrect and that he could proceed with the fourth cause of action regardless of the Court's ruling on the other claims. By Notice dated November 26, 2013, plaintiff's counsel indicated that plaintiff "abandons his Fourth Cause of Action in the above matter for the sole purpose of effecting an immediate appeal to the US Court of Appeals, Second Circuit, against the US District Court's oral ruling and order dismissing his First, Second, Third, Fifth, Six and Seventh Causes of Action." (Docket No. 60.) On December 9, 2013, the Court held a telephone conference, with counsel for both sides and Osuna, to ensure that Osuna and his counsel understood that (1) the Court had ruled that the fourth cause of action—regarding whether plaintiff had received proper notification under the second sentence of Section 3420(g)(2)—should proceed to trial, and (2) if plaintiff decided to abandon that claim, he would not be able to revive that claim in the future once the Second Circuit heard his appeal on the other causes of action for which summary judgment was granted in defendant's favor. The Court then told Osuna and his counsel that they could advise the Court of plaintiff's decision in writing once they received the Court's written ruling memorializing and supplementing the Court's oral ruling on the record. This Memorandum and Order constitutes the Court's written ruling.

I. BACKGROUND

A. Facts

As an initial matter, the Court notes that neither party has complied with Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1"), which requires that a party moving for summary judgment submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. *See* Local Rule 56.1(a); *see also Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 72 (2d Cir. 2001). Although the failure to file a Rule 56.1 Statement is, on its own, grounds for dismissal of a motion for summary judgment, *see MSF Holding Ltd. v. Fiduciary Trust Co. Int'l*, 435 F. Supp. 2d 285, 304–05 (S.D.N.Y. 2006); *Searight v. Doherty Enters., Inc.*, No. 02-CV-0604 (SJF) (JO), 2005 WL 2413590, at *1 (E.D.N.Y. Sept. 29, 2005), district courts have "broad discretion to determine whether to overlook a party's failure to comply with local court rules," *Holtz*, 258 F.3d at 73. Thus, "[w]here parties fail to file Rule 56.1 statements of fact, the court may choose to accept all factual allegations of the opposing parties as true for the purposes of deciding the motion for summary judgment, or may alternately 'opt to conduct an assiduous review of the record.'" *United States v. Kadoch*, No. 96-CV-4720 (CBA), 2012 WL 716899, at *2 (E.D.N.Y. Feb. 17, 2012) (quoting *Holtz*, 258 F.3d at 73); *see also Sawyer v. Wight*, 196 F. Supp. 2d 220, 225 (E.D.N.Y. 2002) (where parties have not followed the requirements of Rule 56.1, courts "may discretionarily choose to search the record of their own accord").

Because the record contains sufficient evidence that is easily reviewable in the parties' affidavits and exhibits, the Court has conducted a diligent review of the record and overlooks the failure by the parties to comply with the rule. A summary of the

undisputed or uncontroverted facts is set forth below.[2]

Plaintiff was the named insured of GEICO automobile insurance policy number 0793-29-84-07, originally issued by defendant on August 8, 1999. (*See* Decl. of Francis J. Scahill, Oct. 26, 2012 ("Scahill Oct. 26 Decl.") Ex. C, GEICO Certified Document U-31-DP-1 (7-07).) This insurance policy provided plaintiff with coverage for "damages which an insured becomes legally obligated to pay because of: —1. bodily injury sustained by a person; and 2. property damage—arising out of the ownership, maintenance or use (including loading or unloading) of the owned auto or a non-owned auto." (Scahill Oct. 26 Decl. Ex. C, GEICO Certified Document A30NY (03-07), at 4.) The policy also contained a number of exclusions, including a spousal liability exclusion that stated, "Section I does not apply: . . . to any insured for bodily injury to the spouse of that insured. We will cover a spouse if named as a third party defendant in a legal action initiated by his or her spouse against another party." (*Id.* at 5.)

On August 8, 2009, plaintiff renewed this insurance policy for the period from September 21, 2009 to March 21, 2010. (Scahill Oct. 26 Decl. Ex. C, GEICO Certified Document U-31-DP-1 (7-07).) Listed on the policy were a 2006 BMW sedan and a 2009 Audi sedan. (Scahill Oct. 26 Decl. Ex. C, GEICO Certified Document U-31-DP-36 (7-07); Aff. of Robert Osuna ("Osuna Aff.") ¶¶ 3–4.)

During this policy period, on October 4, 2009, plaintiff was driving the Audi sedan in inclement weather in Pennsylvania when the car skidded out of control. (Osuna Aff. ¶¶ 9–10.) Plaintiff's wife, who was in the passenger's seat, suffered serious personal injuries as a result of the accident. (*Id.* ¶ 10.)

Thereafter, plaintiff notified defendant of the accident. (*Id.* ¶ 11.) On December 31, 2009, defendant disclaimed coverage for spousal liability, citing the spousal liability exclusion in plaintiff's policy. (Pl.'s Mot. Ex. A, Letter from GEICO to Banu Osuna, Dec. 31, 2009.) Several months later, in a letter dated July 22, 2010, a claims examiner for defendant asked plaintiff's wife to "keep me updated on your progress" and stated that, after plaintiff's wife completed her medical treatment, the claims examiner would "review all your notes so [defendant] can make an offer for your claim." (Pl.'s Mot. Ex. A, Letter from GEICO to Banu Osuna, July 22, 2010.)

On October 3, 2011, plaintiff's wife filed suit against plaintiff in a New York state court, alleging that plaintiff's negligent driving caused the accident and her resulting injuries. (Decl. of Francis J. Scahill, Sept. 27, 2012 ("Scahill Sept. 27 Decl.") Ex. A, Compl., *Osuna v. Osuna*, No. 22298/2011 (N.Y. Sup. Ct. Oct. 3, 2011).) Again plaintiff submitted a claim for coverage to defendant, and again defendant disclaimed coverage, citing the spousal liability exclusion in the policy. (Scahill Sept. 27 Decl. Ex. D, Letter from GEICO to Robert Osuna, Jan. 17, 2012.) This lawsuit ensued.

B. Procedural History

Plaintiff initially commenced this action in New York Supreme Court, Kings County, on June 13, 2011. Defendant removed the action to this Court on July 27, 2011. On February 3, 2012, plaintiff moved for summary judgment, alleging that Section 3420(g) is an unconstitutional bill of attainder. The Court denied plaintiff's

---

[2] For ease of reference, the Court discusses the disputed facts in the context of its legal discussion.

motion by Memorandum and Order dated July 16, 2012.

Thereafter, on September 27, 2012, defendant moved for summary judgment. Plaintiff filed his opposition and a cross-motion for summary judgment on October 12, 2012. Defendant filed a reply and opposition to plaintiff's motion on October 26, 2012. Plaintiff filed his reply on November 16, 2012. The Court heard oral argument on the cross-motions for summary judgment on December 7, 2012.

On September 20, 2013, after having fully considered all of the parties' submissions, the Court ordered in an oral ruling that defendant's motion for summary judgment was granted with respect to every claim except plaintiff's fourth cause of action, and that plaintiff's motion for summary judgment was denied in its entirety.

Thereafter, by letter dated November 5, 2013, plaintiff's counsel submitted a letter to the Court indicating that he interpreted the Court's ruling to have rendered plaintiff's fourth cause of action moot. The Court held a telephone conference on November 19, 2013, during which the Court explained to plaintiff's counsel that plaintiff's fourth cause of action was not moot, and that plaintiff could proceed to trial on his fourth cause of action. One week later, on November 26, 2013, plaintiff's counsel provided notice of his intent to abandon plaintiff's fourth cause of action. In response to this notice, the Court held another telephone conference on December 9, 2013. The Court stated its intention to issue this written opinion clarifying the September 20, 2013 oral ruling, and directed that, ten days from the date of this written Order, plaintiff's counsel shall submit a letter, also signed by his client, indicating whether he wishes to abandon his fourth cause of action.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come

5

forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)) (emphasis in original). As the Supreme Court stated in *Anderson*, "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247–48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

III. PLAINTIFF'S MOTIONS TO STRIKE

Plaintiff has submitted several motions to strike certain affidavits, declarations, and exhibits submitted by defendant in connection with the cross-motions for summary judgment. As set forth below, the Court concludes that there is no basis for granting these motions to strike.

First, plaintiff moves to strike the declarations of Francis J. Scahill, Esq. (the "Scahill declarations"), because they are not based on personal knowledge. The Court disagrees. "Despite the requirement that a declaration be made upon personal knowledge, attorneys often submit declarations in support of or in opposition to a motion for summary judgment for the purpose of introducing documents into the record." *Degelman Indus. Ltd. v. Pro-Tech Welding & Fabrication, Inc.*, No. 06-CV-6346T, 2011 WL 6752565, at *3 (W.D.N.Y. Dec. 23, 2011) (citing *SEC v. Competitive Techs., Inc.*, No. 04-CV-1331(JCH), 2006 WL 3346210, *1 (D. Conn. Nov. 6, 2006) ("[A]ttorney affidavits are acceptable when . . . a party uses them only as a vehicle through which to present admissible evidence relevant to the matter at hand.")); *see Gasser v. Infanti Int'l, Inc.*, No. 03-CV-6413 (ILG), 2008 WL 2876531, at *7 (E.D.N.Y. July 23, 2008). Here, the Court has considered the Scahill declarations only to the extent that they point to other admissible evidence in the record; the Court does not consider any facts contained in the Scahill declarations. Accordingly, plaintiff's motion to strike the Scahill declarations is denied.

Second, plaintiff moves to strike the affidavits of GEICO claims examiner Louise Smallwood (the "Smallwood affidavit") and GEICO senior underwriter Robin Lubow (the "Lubow affidavit"). These affidavits lay the foundation for the admissibility of the GEICO policy documents related to plaintiff's insurance policy, which are appended as exhibits to the Scahill declarations. The Court denies these motions to strike, as well. To the extent plaintiff contends that the Smallwood and Lubow affidavits do not lay the proper foundation for the admissibility of the GEICO policy documents as business records, the Court disagrees. The Smallwood affidavit asserts that GEICO kept the documents in the ordinary course of its business as an insurance company. (Smallwood Aff. ¶ 2.) Moreover, both the Smallwood and Lubow affidavits assert that they reviewed these documents (*Id.*; Lubow Aff. ¶ 1), and they

certify that the GEICO policy documents appended to the Scahill declarations are accurate copies of plaintiff's GEICO insurance policy (Smallwood Aff. ¶ 4; Lubow Aff. ¶ 13). These affidavits suffice for the Court to consider the appended GEICO policy documents in deciding the present summary judgment motions. *See, e.g.*, *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 312–14 (2d Cir. 2008). Furthermore, the Court does not strike the Smallwood and Lubow affidavits on the basis that they certify more than one set of policy documents as plaintiff's complete GEICO policy; plaintiff's argument on this point goes only to the weight of the evidence, not its admissibility. Finally, the Court does not strike the Lubow affidavit even though it was submitted for the first time with defendant's reply papers. The Court determines that plaintiff had an opportunity to respond to the Lubow affidavit—and did so—and thus suffered no prejudice from its delayed submission.

In sum, all motions to strike are denied.

## IV. DISCUSSION

Plaintiff's causes of action fall under three categories of claims: (1) defendant violated Section 3420; (2) Banu Osuna was not plaintiff's "spouse" for purposes of the spousal liability exclusion; and (3) defendant is estopped from denying coverage to plaintiff. The Court considers each category of claims in turn.

### A. Section 3420

Section 3420(g) creates a "statutory presumption that interspousal liability is excluded from coverage unless specifically provided for in the policy." *Byrne v. Nationwide Mut. Fire Ins. Co.*, No. 00-CV-6083, 2001 WL 99892, at *2 (E.D.N.Y. Jan. 16, 2001). Specifically, Section 3420(g) provides, in full:

> No policy or contract shall be deemed to insure against any liability of an insured because of death of or injuries to his or her spouse or because of injury to, or destruction of property of his or her spouse unless express provision relating specifically thereto is included in the policy as provided in paragraphs one and two of this subsection. This exclusion shall apply only where the injured spouse, to be entitled to recover, must prove the culpable conduct of the insured spouse.
>
> (1) Upon written request of an insured, and upon payment of a reasonable premium established in accordance with article twenty-three of this chapter, an insurer issuing or delivering any policy that satisfies the requirements of article six of the vehicle and traffic law shall provide coverage against liability of an insured because of death of or injuries to his or her spouse up to the liability insurance limits provided under such policy even where the injured spouse, to be entitled to recover, must prove the culpable conduct of the insured spouse. Such insurance coverage shall be known as "supplemental spousal liability insurance".

(2) Upon issuance of a motor vehicle liability policy that satisfies the requirements of article six of the vehicle and traffic law and that becomes effective on or after January first, two thousand three, pursuant to regulations promulgated by the superintendent, the insurer shall notify the insured, in writing, of the availability of supplemental spousal liability insurance. Such notification shall be contained on the front of the premium notice in boldface type and include a concise statement that supplementary spousal coverage is available, an explanation of such coverage, and the insurer's premium for such coverage. Subsequently, a notification of the availability of supplementary spousal liability coverage shall be provided at least once a year in motor vehicle liability policies issued pursuant to article six of the vehicle and traffic law, including those originally issued prior to January first, two thousand three. Such notice must include a concise statement that supplementary spousal coverage is available, an explanation of such coverage, and the insurer's premium for such coverage.

N.Y. Ins. Law § 3420(g).

In the instant case, it is undisputed that plaintiff did not have supplemental spousal liability insurance at the time of the October 4, 2009 car accident. Nonetheless plaintiff makes several arguments in an effort to obtain spousal liability coverage from defendant.

### 1. Applicability of Section 3420

At the outset, although plaintiff's first through fourth causes of action assert violations of Section 3420, plaintiff also claims in his motion papers that Section 3420 does not apply at all. Specifically, plaintiff maintains that Section 3420's presumption of spousal liability exclusion does not apply to his case because the law of Pennsylvania—where the car accident occurred—should govern this dispute. The Court disagrees.

"Federal courts exercising diversity jurisdiction apply the choice-of-law rules of the forum state, here New York, to decide which state's substantive law governs." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 175 (2d Cir. 2000); *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Here, New York law is clear: Section 3420(g) governs all insurance policies issued in New York, regardless of the place of the accident triggering an insurer's obligations under the policy. *See New Amsterdam Cas. Co. v. Stecker*, 3 N.Y.2d 1, 4–5 (1957); *Dattore v. Dattore*, 11 Misc. 3d 1057(A), 2006 WL 469326, at *2–3 (N.Y. Sup. Ct. Feb. 27, 2006). Accordingly, the Court applies Section 3420 to the present case.

### 2. Availability of Supplemental Spousal Liability Insurance

Plaintiff's first cause of action alleges that defendant failed to make supplemental spousal liability insurance available to plaintiff. There is simply no evidence in the summary judgment record, however, suggesting that supplemental spousal liability insurance was not made available to

plaintiff. (Whether defendant provided proper *notice* of such insurance is a different issue, discussed *infra*.) Because plaintiff has failed to "come forward with evidence that would be sufficient to support a jury verdict in his favor" on his first cause of action, the Court grants defendant's motion for summary judgment on this claim. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

### 3. Notification of Supplemental Spousal Liability Insurance

Plaintiff's second, third, and fourth causes of action allege that plaintiff did not receive the proper notification about the availability of supplemental spousal liability insurance. To assess the validity of these claims, the Court must determine precisely what type of notification Section 3420(g)(2) requires. In doing so, the Court relies on the plain meaning of the statutory language. *See Estate of Pew v. Cardarelli*, 527 F.3d 25, 30 (2d Cir. 2008) ("We first look to the statute's plain meaning; if the language is unambiguous, we will not look farther."); *Green v. City of New York*, 465 F.3d 65, 78 (2d Cir. 2006) ("Statutory analysis begins with the text and its plain meaning, if it has one. Only if an attempt to discern the plain meaning fails because the statute is ambiguous, do we resort to canons of construction. If both the plain language and the canons of construction fail to resolve the ambiguity, we turn to the legislative history.") (internal citations and quotation marks omitted); *Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2d Cir. 1999) ("It is axiomatic that the plain meaning of a statute controls its interpretation, and that judicial review must end at the statute's unambiguous terms. Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous.") (internal citations omitted).

Considering the plain meaning of the statutory language at issue here, the Court concludes that Section 3420(g)(2) requires two different kinds of notification. First, upon the issuance of a policy that "becomes effective on or after January first, two thousand three," notification must "be contained on the front of the premium notice in boldface type and include a concise statement that supplementary spousal coverage is available, an explanation of such coverage, and the insurer's premium for such coverage." N.Y. Ins. Law § 3420(g)(2). Second, for all policies, "including those *originally issued* prior to January first, two thousand three," notification must be provided at least once per year and "include a concise statement that supplementary spousal coverage is available, an explanation of such coverage, and the insurer's premium for such coverage." *Id.* (emphasis added). In this context, "originally issued" refers to the date the policy was first issued, not the date it was renewed.[3] In other words, Section

---

[3] Having examined decisions of federal courts sitting in New York, New York state courts, and other courts, it is clear that courts and insurance companies uniformly use the term "originally issued," consistent with its plain meaning, to distinguish an insurance policy as first issued ("originally issued") from renewal policies. *See Feinblum v. Liberty Mut. Ins. Co.*, No. 02-CV-5085 (NRB), 2003 WL 21673620, at *1 (S.D.N.Y. July 16, 2003) ("The June 1999 policy was originally issued in 1996, and had been renewed three times prior to the accident precipitating this lawsuit."); *Burt Rigid Box Inc. v. Travelers Prop. Cas. Corp.*, 126 F. Supp. 2d 596, 616 (W.D.N.Y. 2001) (referring to "Aetna general liability insurance policy No. 42774, originally issued in 1965 to Moore and renewed in 1966"), *aff'd in part, rev'd in part*, 302 F.3d 83 (2d Cir. 2002); *Newark Ins. Co. v. Blair*, No. 92-CV-1648 (RPP), 1994 WL 4410, at *1 (S.D.N.Y. Jan. 3, 1994) (referring to a "Policy originally issued by Newark, and subsequently renewed"); *Ogden Corp. v. Travelers Indem. Co.*, 681 F. Supp. 169, 171 (S.D.N.Y. 1988) ("The present policy is a renewal policy of the same coverage originally issued in 1975 . . . ."); *Auto. Ins. Co. v. Wynns*, 493 N.Y.S.2d 727, 728 (N.Y. Sup. Ct. 1985)

3420(g)(2) distinguishes between policies originally issued on or after January 1, 2003, and those originally issued before January 1, 2003 (even if a renewal is issued after that date). For policies that fall into the latter category, it is clear that the notification need not appear in boldface type because Section 3420(g)(2) omits boldface type from the list of notification requirements. *See, e.g.*, *Moreno-Bravo v. Gonzales*, 463 F.3d 253, 261–62 (2d Cir. 2006) ("[W]here [the legislature] includes particular language in one section of a statute but omits it in another" [the court] should refrain from reading into the statute a phrase that [the legislature] has left out of the latter section." (quoting *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)))).

The Court's interpretation of Section 3420(g)(2) is fatal to plaintiff's second and third causes of action, which allege that plaintiff did not receive notification of supplemental spousal liability insurance in boldface type. Plaintiff's policy with defendant was originally issued before January 1, 2003—on August 8, 1999. Moreover, the Court does not consider the renewal policy covering the period from September 21, 2009 to March 21, 2010 to be a newly issued policy; rather, this policy states clearly that it is a renewal, and that the policy was originally issued on August 8, 1999.[4] (*See* Scahill Oct. 26 Decl. Ex. C, GEICO Certified Document U-31-DP-1 (7-07).) In short, because plaintiff's policy falls within the category of policies "originally issued prior to January first, two thousand three," plaintiff was not entitled to notification in boldface type. *See* N.Y. Ins. Law § 3420(g)(2). Consequently, plaintiff's second and third causes of action cannot survive defendant's motion for summary judgment.

In contrast to his second and third causes of action, plaintiff's fourth cause of action alleges that defendant altogether failed to notify plaintiff about the availability and cost of supplemental spousal liability insurance. As a matter of law, plaintiff was entitled to receive such notification, albeit not in boldface type. *See* N.Y. Ins. Law § 3420(g)(2). As a factual matter, it is disputed whether plaintiff received such

---

("Allstate Insurance Company had originally issued a policy of insurance, pursuant to the Assigned Risk Plan, covering the Lopez vehicle, effective April 17, 1978 which expired April 17, 1979 and was renewed with an expiration date of April 17, 1980."); *Flax v. O'Dea*, 263 N.Y.S.2d 987, 989 (N.Y. Sup. Ct. 1965) ("The original policy was issued in 1940; the current policy was effective May 1, 1961, but has been amended in material particulars since April 13, 1962."); *accord Dungey v. Haines & Britton, Ltd.*, 614 N.E.2d 1205, 1209 (Ill. 1993) ("An examination of the two endorsements shows that Shirley signed exclusion endorsement 'CE–180' when the first policy was originally issued and exclusion form 'CE–303' at the time of its first renewal."); *Ryan v. Chopp*, 22 N.W.2d 363, 365 (Mich. 1946) ("Other fire insurance policies which were originally issued in the name of Margaret Ryan were renewed in 1939 in Urban Ryan's name."); *Poch v. Equitable Life Assurance Soc'y of U.S.*, 22 A.2d 590, 591 (Pa. 1941) ("The policy was originally issued for the term of one year, but contained a provision for automatic renewal by the Society upon each anniversary of the Register date and, in accordance with such annual renewal provision, was renewed on June 30, 1932, in the form originally issued, for the further period of one year."); *Krone v. Ins. Co. of N. Am.*, 24 P.2d 459, 460 (Cal. 1933) ("The fact is that during the trial it was disclosed by the testimony that the present policy was a renewal of the one originally issued."); *Ins. Co. of N. Am. v. Bachler*, 62 N.W. 911, 912 (Neb. 1895) ("At the time the policy was originally issued, and at the time the policy was renewed, on the 1st of October, 1891, there existed an unrecorded mortgage against the insured property.").

---

[4] Moreover, the fact that the renewal policy added a new vehicle does not change the fact that the policy itself was still "originally issued" prior to January 1, 2003.

notification. To support his claim, plaintiff has asserted in his own sworn statement that he never received any such notification. (Osuna Aff. ¶¶ 6–7.) In response, defendant has submitted plaintiff's policy documents, which include a notification concerning supplemental spousal liability insurance. (*See* Scahill Oct. 26 Decl. Ex. C, GEICO Certified Document M-316-NY-B (4-03); *see also* Scahill Sept. 27 Decl. Exs. G, J–M.) In light of this factual dispute, the Court denies defendant's and plaintiff's motions for summary judgment as to plaintiff's fourth cause of action.

B. Marital Status

In his fifth and sixth causes of action, plaintiff disputes the applicability of the spousal liability exclusion to his case. Specifically, in his fifth cause of action, plaintiff contends that Banu Osuna was not his spouse at the time of the accident, because he had filed for a divorce in New York Supreme Court, Kings County. In his sixth cause of action, plaintiff maintains that Banu Osuna was not his "spouse" as defined by the insurance policy. The Court disagrees with both contentions.

1. Divorce

Under New York law, dissolution of a marriage occurs upon entry of a final divorce decree. *See, e.g.*, *Burgher v. Burgher*, 184 Misc. 682, 682–83 (N.Y. Sup. Ct. 1945) ("An interlocutory judgment of absolute divorce does not terminate the marriage of the parties and they remain husband and wife until the entry of the final decree."); *see also* 48 N.Y. Jur. 2d Domestic Relations § 2340. It is equally well-settled that defendant's liability became fixed upon the occurrence of the accident. *See Stonborough v. Preferred Accident Ins. Co. of N.Y.*, 292 N.Y. 154, 155–56 (1944). Here, no final divorce decree had issued at the time of plaintiff's accident. The Court thus concludes that defendant is entitled to summary judgment on plaintiff's fifth cause of action.

2. Policy Definition of "Spouse"

The policy at issue defines "You" and "Your" to mean "the policyholder named in the Declarations *or his or her spouse if a resident of the same household*." (Scahill Oct. 26 Decl. Ex. C, GEICO Certified Document A30NY (03-07), at 4.) Plaintiff seizes upon this language to argue that his wife was not his "spouse" under the policy because he and his wife were not members of the same household at the time of the accident. The Court disagrees.

Simply put, the policy definition of a spouse as "the spouse of the named insured if a resident of the same household" is neither a declaration of coverage nor a representation of compliance with Section 3420(g). *Crilley v. Allstate Ins. Co.*, 239 N.Y.S.2d 27, 28 (2d Dep't 1963), *aff'd*, 15 N.Y.2d 821 (1965). "Rather, such policy definition represents a specification merely of what added benefits [the spouse] would be entitled to receive were she a member of the insured's household." *Id.* As such, plaintiff cannot rely on this definition in the policy to prevent the application of the spousal liability exclusion to his case.

C. Estoppel

Finally, plaintiff maintains that defendant is estopped from disclaiming coverage based on defendant's letter dated July 22, 2010, in which defendant promised to "make an offer" for plaintiff's wife's claim. This letter alone cannot form the basis of an estoppel claim.

An insurer may be estopped from denying coverage "only where the insured

has suffered prejudice by reason of the insurer's agreement to undertake a coverage defense." *Great Am. E & S Ins. Co. v. Hartford Fire Ins. Co.*, No. 09-CV-10010 (PAC) (GWG), 2012 WL 3186086, at *9 (S.D.N.Y. Aug. 9, 2012). Here, defendant explicitly disclaimed coverage based on the spousal liability exclusion in a letter dated December 31, 2009. No rational factfinder could conclude from the facts of the instant case, therefore, that plaintiff relied to his detriment on the July 22, 2010 letter. The Court thus grants summary judgment on plaintiff's seventh cause of action in defendant's favor.

## V. Conclusion

For the reasons set forth herein, the Court grants defendant's motion for summary judgment with respect to all of plaintiff's claims except the fourth cause of action, and denies plaintiff's motion for summary judgment in its entirety.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 17, 2014
      Central Islip, NY

\* \* \*

Plaintiff is represented by Ian Anderson, P.O. Box 150362, Kew Gardens, NY 11415. Defendant is represented by Francis J. Scahill, Picciano & Scahill, P.C., 900 Merchants Concourse, Suite 310, Westbury, NY 11590.